O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DANIEL ANDERSON, on behalf       )   Case No. CV 09-04271 DDP (Ex)
of himself and all others        )
similarly situated,              )
                                 )   **ORDER GRANTING DEFENDANT'S MOTION**
                Plaintiff,       )   **TO DISMISS**
                                 )
     v.                          )
                                 )   [Dkt. No. 54]
HSBC BANK NEVADA, N.A.,          )
                                 )
                Defendant.       )
_____    )

I.   **Background**

     Presently before the court is Defendant HSBC Bank Nevada, N.A. ("HSBC")'s Motion to Dismiss First Amended Complaint.  Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following order.

I.   **Background**

     A. Factual History

     The facts of this case are recited in the court's earlier order granting HSBC's motion to dismiss Plaintiff's original complaint in part.  (Order Granting in Part and Denying in Part HSBC's Motion to Dismiss, Dkt. No. 25 ("Order")).  As described

1  therein, HSBC issued Plaintiff a credit card.  (Id. at 2.)  The

2  written credit card agreement between the parties ("the Agreement")

3  stated:

> All your [Annual Percentage Rate]s may
> automatically increase up to the Default APR if
> you default under any Card Agreement that you have
> with us because you fail to make a payment to us
> when due or you exceed your credit line.
>
> We may consider the following factors in
> determining your Default APR: how long your
> Account has been open, the existence, seriousness
> or timing of the defaults on your Account or any
> other account you have with us; other indications
> of your Account usage and performance; information
> about your relationship with us or any of our
> related companies; and information from consumer
> credited reports obtained from credit bureaus.
> The Default APR takes effect as of the first day
> of the billing cycle in which the default occurs.

13  (Id.)

14      Plaintiff failed to make a minimum monthly payment in

15  August 2007, but HSBC did not raise his interest rate.

16  (Id.)  Plaintiff again missed a payment on November 8, 2007.

17  HSBC sent Plaintiff a statement on November 14, 2007, which

18  indicated that Plaintiff's interest rate had not increased.

19  (FAC ¶ 13.)  One month later, on December 14, 2007, HSBC

20  decided to raise Plaintiff's interest rate to the Default

21  APR of 31.49%.  (FAC ¶ 14.)  HSBC applied the rate increase

22  to the first day of the billing cycle, November 15, 2007.

23  (FAC ¶ 15.)

24      B.  Procedural History

25      Plaintiff's original complaint alleged four claims

26  under Nevada law for 1) unjust enrichment, 2) failure to

27  provide notice of an interest rate change in violation of

28  Nevada Revised Statutes § 97A.140, 3) consumer fraud under

1  Nevada Revised Statutes § 41.600(2)(e), and 4) breach of
2  contract.   On Defendant's motion, this court dismissed all
3  but Plaintiff's breach of contract claim.   The court allowed
4  the breach of contract claim to proceed under the Ninth
5  Circuit's decision in <u>McCoy v. Chase Manhattan Bank, USA</u>,
6  559 F.3d 963 (9th Cir. 2009) ("<u>McCoy I</u>").   The court then
7  stayed proceedings in this case, pending the Supreme Court's
8  decision in <u>Chase Bank USA, N.A. v. McCoy</u>, 131 S.Ct. 871
9  (2011), which reversed <u>McCoy I</u> and remanded to the Ninth
10 Circuit, which then vacated its decision. <u>See McCoy v. Chase</u>
11 <u>Manhattan Bank, USA, N.A.</u>, 654 F.3d 971 (9th Cir. 2011)
12 ("<u>McCoy II</u>").

13     Plaintiff then filed a First Amended Complaint ("FAC").
14 Like the original complaint, the FAC alleges causes of
15 action for 1) unjust enrichment, 2) consumer fraud, 3)
16 violation of N.R.S. Sec. 97A.140, and 4) breach of contract,
17 as well as a new claim for 5) violation of the National Bank
18 Act, 12 U.S.C. §§ 85, 86.[1]   HSBC now moves to dismiss the
19 FAC in its entirety.

20 **II.  Legal Standard**

21     A complaint will survive a motion to dismiss when it
22 contains "sufficient factual matter, accepted as true, to
23 state a claim to relief that is plausible on its face."
24 <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell</u>
25 <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).   When

26

27 ───────────────
   [1] Plaintiff does not intend to pursue his claim for breach
   of contract, and does not oppose dismissal of that claim.
28 (Opp. at 14).   Plaintiff's breach of contract claim is,
   therefore, dismissed with prejudice.

1  considering a Rule 12(b)(6) motion, a court must "accept as

2  true all allegations of material fact and must construe

3  those facts in the light most favorable to the plaintiff."

4  Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

5  Although a complaint need not include "detailed factual

6  allegations," it must offer "more than an unadorned, the-

7  defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S.

8  at 678.  Conclusory allegations or allegations that are no

9  more than a statement of a legal conclusion "are not

10  entitled to the assumption of truth." Id. at 679.  In other

11  words, a pleading that merely offers "labels and

12  conclusions," a "formulaic recitation of the elements," or

13  "naked assertions" will not be sufficient to state a claim

14  upon which relief can be granted.  Id. at 678 (citations and

15  internal quotation marks omitted).

16     "When there are well-pleaded factual allegations, a court

17  should assume their veracity and then determine whether they

18  plausibly give rise to an entitlement of relief." Id. at

19  679.  Plaintiffs must allege "plausible grounds to infer"

20  that their claims rise "above the speculative

21  level." Twombly, 550 U.S. at 555. "Determining whether a

22  complaint states a plausible claim for relief" is a

23  "context-specific task that requires the reviewing court to

24  draw on its judicial experience and common sense."  Iqbal,

25  556 U.S. at 679.

26  ///

27  ///

28  ///

1 **III. Discussion**

2     A.  Consumer Fraud

3     Plaintiff alleges, as he did in his original complaint,

4 that Defendant committed consumer fraud in violation of

5 N.R.S. § 41.600 by making a false representation in a

6 transaction, failing to disclose a material fact in

7 connection with the sale or lease of goods or services,

8 and/or violating a state or federal statute or regulation

9 related to the sale of goods or services, in violation of

10 the Nevada Deceptive Trade Practice Act ("NDTPA"), N.R.S. §§

11 598.0915(15), 598.0923(2) and 598.0923(3).  (FAC ¶ 33.)

12     With the exception of certain allegations barred under

13 McCoy II, the FAC's consumer fraud allegations are verbatim

14 recitations of the original complaint.  As the court

15 discussed, Plaintiff has not identified any false

16 representation or concealment of a material fact, as the

17 Agreement explicitly stated that a Default APR could be

18 imposed retroactively to the beginning of a billing cycle.

19 Furthermore, as stated in the court's earlier Order, the

20 court construes the term "sale or lease of goods or credit"

21 to exclude consumer credit.  (Order at 12-14.)  Defendant's

22 motion to dismiss Plaintiff's consumer fraud claims is

23 therefore granted, for the reasons previously discussed.

24 See United States v. Lummi Indian Tribe, 235 F.3d 443, 452

25 (9th Cir. 2000) (law of the case doctrine precludes a court

26 from reconsidering an issue previously decided).

27     C.  Nevada Revised Statutes Sec. 97A.140

28     Nevada Revised Statutes § 97A.140(4) provides:

1

> A[] [credit card] issuer may unilaterally
> change any term or condition for the use of a
> credit card without prior written notice to the
> cardholder unless the change will adversely
> affect or increase the costs to the cardholder
> for the use of the credit card. If the change
> will increase such costs, the issuer shall
> provide to the cardholder:
>
> (a) An identifiable notice of the change at
> least 30 days before the change becomes
> effective; **and**
>
> (b) An opportunity to avoid the change,
> including, without limitation, by voluntarily
> closing the credit card account after providing
> notice to the issuer. If the cardholder closes
> the credit card account and the issuer provides
> any information about the account to a credit
> reporting agency, the issuer must notify the
> agency that the cardholder voluntarily closed
> the credit card account.

N.R.S. § 97A.140(4)(emphasis added).

This court's earlier Order found § 97A.140 to be

preempted by the National Bank Act and its implementing

regulations, and dismissed Plaintiff's original claim.

(Order at 8-11) Here, Plaintiff attempts to revive his §

97A.140 claim by focusing on subsection (b) as if it were

freestanding, and contending that this court's earlier Order

only found subsection (a) preempted.  The court is not

convinced.  In the absence of the (preempted) notice

requirement set out in subsection (a), is unclear how a

cardholder who had no advance knowledge of a change in terms

would ever be able to avoid those terms before they took

effect.[2]  The statute's use of the word "and" further

---

[2] Plaintiff proposes a complicated scheme under which
a cardholder who <u>later</u>, at some unspecified date, decided
to opt out of new terms would be entitled to a refund of
any additional charges.  Even putting aside questions
regarding the legality of Plaintiff's hypothetical system,
(continued...)

1  illustrates the inextricable link between the two

2  subsections are inextricably linked, as implicitly

3  recognized in this court's earlier Order. (Order at 10:24-

4  11:3 ("The crux of Plaintiff's claim is that § 97A.140

5  required HSBC to provide notice of a forthcoming interest

6  rate increase . . . (along with an opportunity to opt out) .

7  . . .") (emphasis added).)  Plaintiff's claim under N.R.S.

8  Sec. 97A.140 is, therefore, dismissed..  See Lummi Indian

9  Tribe, 135 F.3d at 452.[1]

10       C.   National Bank Act

11       Plaintiff also claims that Defendant violated the

12  National Bank Act, 12 U.S.C. Sec. 85, by charging an

13  interest rate higher than that permitted by the Nevada law.

14  Nevada, however, has no usury law or maximum allowable

15  interest rate.  To the contrary, Nevada Revised Statutes

16  Section 99.050 states that "parties may agree for the

17  payment of any rate of interest."  N.R.S. § 99.050 (emphasis

18  added.)  Because the Default APR did not, and indeed, could

19  not, exceed the rate allowable under state law, Plaintiff

20  cannot state a claim for violation of the National Bank Act.

21  ///

22  ///

23  _____

24       [2](...continued)
    such a scheme would not allow cardholders to avoid the

25  imposition of new terms so much as present both parties
    with the more daunting task of unwinding the effects of

26  already-applied changes.
    [1] The court further notes that Defendant did not change any

27  term or condition of the Agreement, but rather implemented
    its terms, which provide for the change of the interest

28  rate to the Default APR under certain conditions, including
    those present here.

1     D.   Unjust Enrichment

2          As the court discussed in its original Order, Nevada

3     courts allow parties to bring unjust enrichment claims where

4     there is no enforceable contract, but a defendant "is in

5     possession of money or property which in good conscience and

6     justice he should not retain . . . ."  <u>LeasePartners Corp.</u>

7     <u>v. Robert L. Brooks Trust Dated Nov. 12, 1975</u>, 942 P.2d 182,

8     187 (Nev. 1997) (quotation marks and citation omitted).

9     Plaintiff argues that the contractual provision allowing

10    HSBC to raise interest rates as of the first date of a

11    billing cycle "violates substantive Nevada law which . . .

12    allows a Cardholder the opportunity to avoid the change . .

13    . ."  (Opp. at 5).[2]  As described above, however, the

14    substantive Nevada law upon which Plaintiff relies is

15    preempted and/or inapplicable.  Plaintiff's unjust

16    enrichment claim is, therefore, dismissed.

17    **IV.   Conclusion**

18         For the reasons stated above, Defendant's Motion to

19    Dismiss is GRANTED.

20

21    IT IS SO ORDERED.

22

23    Dated: October 11, 2012

24                                 DEAN D. PREGERSON
                                   United States District Judge

25    _____

26    [2]
      The FAC itself is somewhat less clear, alleging that
27    Defendant's "retroactive increase of . . . interest rates .
      . . are void and unenforceable because they constitute
28    illegal penalties," referring not to any contractual
      provision, but rather to Defendant's acts themselves.